IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 25, 2011 Session

## STATE OF TENNESSEE v. JAKE L. MONROE, ALIAS

**Appeal from the Criminal Court for Knox County**
**No. 87861    Bob R. McGee, Judge**

**No. E2011-00315-CCA-R3-CD - Filed June 22, 2012**

The Defendant, Jake L. Monroe, alias, appeals as of right from a jury conviction for possession with intent to sell and deliver a controlled substance within a drug-free school zone, a class B felony. The Defendant contends that he received ineffective assistance of counsel at trial. Following our review, we affirm the judgment of the trial court but remand the case for correction of the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed;
Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. JERRY L. SMITH, J., not participating.

Mitchell T. Harper, Knoxville, Tennessee (at trial); and Richard Gaines, Knoxville, Tennessee (on appeal); for the appellant, Jake L. Monroe, alias.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Leon Franks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On October 3, 2007, the Defendant was indicted for possession with intent to sell a controlled substance and possession with intent to deliver a controlled substance within 1,000 feet of a school. After several continuances and a change of assistant district attorneys, the Defendant's trial was held on August 25, 2009.

At trial, both the principal and the school resource officer from the Defendant's high school testified regarding the charges against the Defendant, who was a high school student at the time of the offense.[1]  The principal explained that the Defendant was found to be in possession of a pill, which was a violation of school policy. He conducted a search of the Defendant's person, and the search yielded additional pills:  three in a napkin, nine in the Defendant's right shoe, and thirty in his left shoe.  The principal asked the Defendant to write a statement explaining why the pills were in his possession.  In the statement, the Defendant admitted that he purchased the pills and intended to sell them for a profit.  The school resource officer, Chris McNew, also testified, and his testimony essentially corroborated that of the principal.  The Defendant testified at trial.  He explained that he made the inculpatory statement about selling drugs at school because he just "told them what they wanted to hear." The Defendant testified that he had taken 18-24 of the pills in his possession while waiting to speak with the principal and was "throwing up and passing out by the time he got to the jail." However, Officer McNew testified on rebuttal about the Defendant's physical and mental state during transport to jail, explaining that the Defendant seemed "completely okay except for being scared."

The jury convicted the Defendant of the charged offenses.  On November 4, 2009, through newly retained counsel, the Defendant filed two motions for new trial, alleging that the State presented insufficient evidence to sustain his conviction and that the verdict was against the weight of the evidence.

A sentencing hearing was held on November 5, 2009, and the court merged the delivery charge into the sale charge and sentenced the Defendant to eight years in confinement.[2]  On February 16, 2010, the Defendant filed a Motion For New Trial Date, requesting a forty-five day extension of the date set for hearing the motion for new trial.  The unopposed motion was granted, and a hearing on the motion for new trial was set for March 15, 2010.  The Defendant then filed a motion to supplement his motion for new trial on March 9, 2010, alleging that he "received ineffective assistance of counsel at pretrial and trial levels of his case."  That same day, the Defendant also filed another motion for a continuance, this time requesting a sixty-day extension and explaining that his expert witness was unavailable until mid-to-late April.  On September 1, 2010, the Defendant filed an additional amended motion for new trial, which specifically stated the grounds on which the

---

[1] The trial testimony summarized here is gleaned from the trial court's order denying the Defendant's motion for new trial because the trial transcript was not included in the record.  Also, the principal is not referred to by name because the principal is not referred to by name in the trial court's order.

[2] The judgment incorrectly reflects that the Defendant has a 30% release eligibility. However, the Defendant actually has a release eligibility of 100% because he was convicted under the Drug Free School Zone Act. The judgment correctly reflects that the Defendant was convicted under the Drug Free School Zone Act.

Defendant alleged trial counsel was ineffective. The motion also requested that the court "facilitate the interview by the psychologist with [the Defendant] to determine whether there is crucial testimony that could be relevant and affect the issues before the court." The court granted the motion and ordered a full-contact visit between the Defendant and the psychologist, Dr. James Murray.

*I. New Trial Hearing*

The hearing on the motion for new trial was held on January 4, 2011. The Defendant's trial counsel testified that he had been practicing law approximately eleven years and that he had previously worked as an assistant district attorney until going into private practice in 2005. Trial counsel testified that he was retained by the Defendant's mother, who attended most of his meetings with the Defendant in the early stages. Trial counsel also testified that when he was hired, the case was in felony sessions court, and "the school zone portion of the case was not in play." Trial counsel testified that he waived the preliminary hearing in exchange for an earlier, open-file discovery, explaining that it was a common practice in Knox County. Trial counsel explained that early in negotiations, the State offered the Defendant a plea agreement for 10 years and said that he could apply for probation. Trial counsel testified that the Defendant rejected this offer and consented to allow the case to proceed to the grand jury.

Trial counsel admitted that he continuously told the Defendant and his family that he was working on a plea agreement with the State and that he continued to work towards an agreement with the State until the day of trial. Trial counsel explained that because the Defendant did not have any prior convictions and was charged with a non-violent crime, he believed that they could eventually reach a more favorable agreement with the State. Trial counsel testified that he explained the charges against the Defendant, including the effect of the Drug Free School Zone Act, to both him and his family. Trial counsel also testified that he relayed to the Defendant the amount of time he faced if convicted of the offenses as charged.

Trial counsel admitted that his ultimate trial strategy, to argue that the statement was coerced and the Defendant was solely guilty of misdemeanor possession, was contradictory to the handwritten statement the Defendant had given at school. Counsel explained that he did not try to suppress the inculpatory statement because he could not conceive a legal theory to keep the statement out. However, trial counsel did testify that he conducted legal research to identify other viable defenses, albeit unsuccessfully.

The Defendant's mother, Tama Monroe, also testified at the hearing. The essence of her testimony was that trial counsel continuously told her and the Defendant that he would

not have to serve jail time, so the family was shocked when the Defendant was taken to jail. Ms. Monroe also testified that both she and the Defendant were unaware that the trial would actually proceed on the scheduled trial date because trial counsel assured them that the case was "going to get worked out." She explained that as the scheduled trial date approached, trial counsel was "still saying that he's going to file for diversion and that [the Defendant] should get a year's probation and then [get] it expunged." Ms. Monroe testified that she was at every meeting that trial counsel had with the Defendant, and trial counsel never mentioned that the Defendant was charged with a violation of the Drug Free School Zone Act. She explained that trial counsel "acted like he was as dumb as me when it c[a]me to the drug free school zone[,]" and he never prepared the Defendant for his testimony at trial. Ms. Monroe testified that she and the Defendant first learned of the possible eight-year sentence on the morning of trial, and when the Defendant asked trial counsel if the sentence was eligible for probation, he responded, "We're going to have to go to trial."

The Defendant's father, Jerry Monroe, testified that he went to see trial counsel around 4:30 p.m. or 5:30 p.m. the day before trial, and trial counsel assured him that everything was taken care of and his son would not receive jail time. Mr. Monroe testified that when he left trial counsel's office, he was under the impression that the only remaining issue to work out was the length of the Defendant's probation. Mr. Monroe testified that he was in shock when the trial commenced the following day, and he was never aware that the Defendant was facing an 8 to 12 year sentence with mandatory imprisonment.

At the close of proof, the trial court explained that it was taking the matter under advisement and would issue an order, including its findings of fact and conclusions of law, after reviewing the trial notes.

## II. Trial Court's Order

The trial court issued a detailed order denying the Defendant's motion for new trial on January 20, 2011. First, the court summarized the evidence presented at trial. Then, the trial court addressed each of the Defendant's bases for alleging that trial counsel was ineffective. The trial court stated that "the cases came out of the grand jury charging the more serious school zone violations[; trial counsel] testified that he did meet with defendant and explained the penalty, including the 100 % sentencing provision." The trial court explained that during its observations of the jury and overall trial, it noticed that the Defendant lost his credibility with the jury when his testimony regarding his physical state upon arrival at the jail was impeached by the transporting officer. In support of its denial, the trial court issued the following findings of fact:

[T]rial counsel found out all there was to find out about [the Defendant's] case, that he conferred with the [D]efendant promptly and as frequently as needed, that he correctly assessed the admissibility of the evidence, that he conducted legal research, that he earnestly attempted to settle the case by offering to plead guilty to a lesser offense, that he had a theory of defense, and that he got his theory of defense, along with argument to support it, to the jury. . . . Further, the [D]efendant has offered no evidence that but for counsel's ineffectiveness, the result in this case would have been different.

In sum, the court concluded, as a matter of law, that the Defendant did not receive ineffective assistance of counsel and that its acceptance of the jury verdict was not error.

## ANALYSIS

The Defendant contends that his trial counsel's "near-complete lack of pretrial and trial preparation" falls below the range of competence demanded of attorneys in criminal cases, and it is the cumulative effect of many factors that indicate that counsel was not adequately prepared.[3] The Defendant cites a litany of factors that form the basis of his ineffective assistance of counsel claim, but the essence of the claim is that "trial counsel prepared his case purely for the purposes of trying to 'work the case out.'"[4] The State responds that the trial court correctly found that the Defendant's trial counsel was not ineffective and that the Defendant failed to prove that trial counsel's deficient performance resulted in prejudice.

Although a defendant may raise an ineffective assistance of counsel claim on direct appeal, this court has repeatedly noted that "the practice . . . is 'fraught with peril' since it 'is [typically] impossible to demonstrate prejudice as required' . . . " at this stage of the proceedings. State v. Blackmon, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001) (citations

---

[3] The Defendant's brief simply lists multiple actions or omissions by trial counsel, in bullet format, in support of his claim that trial counsel was ineffective. However, these facts are only set out in the statement of facts and are not listed with supporting authority or placed in the argument section of the brief, making appellate review difficult. See Stacey Dewayne Ramsey v. State, No. W2006-01827-CCA-R3-PC, 2008 WL 4117963, at *5 (Tenn. Crim. App. Sept. 3, 2008).

[4] The trial court characterizes the factual bases for the Defendant's argument that trial counsel was deficient as follows: (1) trial counsel's decision to waive the Defendant's preliminary hearing in return for open-file discovery at the Sessions Court level; (2) trial counsel's failure to file pretrial motions, namely a motion to suppress the Defendant's inculpatory statement to school officials; (3) and general complaints that trial counsel did not warn the Defendant or his family of the "great jeopardy" the Defendant was facing.

omitted). Nevertheless, there is no prohibition against litigation of ineffective assistance of counsel claims on direct appeal, as opposed to collateral proceedings. E.g., State v. Burns, 6 S.W.3d 453, 461-63 (Tenn. 1999) (granting relief in direct appeal on ineffective assistance of counsel claim); see State v. James Paris Johnson, No. E2008-02555-CCA-R3-CD, 2010 WL 3565761, at *17 (Tenn. Crim. App. 2010).

The same standard applies to claims of ineffective assistance of counsel raised on direct appeal and post-conviction proceedings. See Burns, 6 S.W.3d at 461 n.5 (emphasis added). In a post-conviction proceeding, the burden is on the petitioner to prove the underlying facts of counsel's alleged error by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009). Once a defendant/petitioner establishes the fact of counsel's alleged error, the trial court must determine whether the errors resulted in the ineffective assistance of counsel. Dellinger, 279 S.W.3d at 293; see Strickland v. Washington, 466 U.S. 668, 687 (1984).

On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see also Lockart v. Fretwell, 506 U.S. 364, 368-372 (1993). In other words, a showing that counsel's performance was deficient is not enough; rather, the defendant must also show that but for counsel's deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n. 2 (Tenn.1989).

A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a defendant raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to

undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Id. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see also DeCoster, 487 F.2d at 1201.

The Defendant essentially argues that the cumulative effect of all counsel's errors resulted in prejudice, referring this court back to the twenty-nine bulleted factual statements recited in the facts section of his brief. However, the trial court found as a matter of law that counsel was not deficient, and without a finding of deficiency, a prejudice analysis is not warranted. We conclude from our review of the record that the evidence does not preponderate against the trial court's findings. The trial court accredited trial counsel's testimony, concluding that trial counsel found "all there was to find out about the Defendant's case, that he conferred with the Defendant promptly and as frequently as needed, that he correctly assessed the admissibility of the evidence, that he conducted legal research, that he earnestly attempted to settle the case by offering to plead guilty to a lesser offense, that he had a theory of defense, and that he got his theory of the defense, along with argument to support it, to the jury." In accrediting trial counsel's testimony, the trial court also implicitly found that trial counsel advised the Defendant of the sentencing range of the Drug Free School Zone statute. Additionally, the trial court found that the Defendant offered no evidence that he was prejudiced by trial counsel's alleged ineffectiveness. When a defendant fails to establish prejudice, the ineffective assistance claim necessarily fails. See Strickland, 466 U.S. at 697.

The only specific argument in the record that even alludes to prejudice is the assertion that trial counsel failed to file a motion to suppress. Trial counsel admitted under oath that if he had filed a motion to suppress, and it had been granted, the outcome of the case would have been different. However, the court stated in its findings that trial counsel correctly

determined that the Defendant's inculpatory statement would not have been suppressed. Thus, the Defendant's argument that trial counsel's failure to file a motion to suppress does not rise to the level of prejudice because the standard requires a defendant to illustrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. (emphasis added). "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Because the court agreed with trial counsel, finding as a matter of law that there was no viable legal argument to support suppression, the Defendant has not shown that counsel's failure to file the motion resulted in prejudice.

Regarding the remaining list of bulleted facts the Defendant cites in the facts section of his brief supporting his claim, because the Defendant failed to explain how trial counsel's acts or omissions were deficient, or resulted in prejudice, they also fail.[5] See id.; see also Stacey Dewayne Ramsey v. State, No. W2006-01827-CCA-R3-PC, 2008 WL 4117963, at *5 (Tenn. Crim. App. Sept. 3, 2008) (explaining the "shotgun approach" to brief writing and that the petitioner's brief was an unsuccessful example of this approach; finding that the Defendant's brief raised a multitude of claims of ineffective assistance, in bullet form, without citation to the record or supporting authority, or any argument as to why the action or inaction of counsel was deficient, or how the alleged deficiency prejudiced the petitioner; and explaining that because of the nature of the petitioner's brief, it was not necessary to set out each of the petitioner's numerous allegations in detail). Accordingly, we conclude that the Defendant was not denied the effective assistance of counsel and that he is not entitled to relief on this issue.

Following our review of the record, we note that the judgment incorrectly reflects that the Defendant is eligible for release after serving thirty percent of his sentence. However, as the judgment reflects, the Defendant was convicted pursuant to the Drug Free School Zone Act, which requires 100 percent service. The record clearly reflects that the Defendant must serve the entire eight-year sentence before being eligible for release. Accordingly, we remand the case to the trial court for entry of the corrected judgment reflecting the release eligibility as imposed by the trial court at the sentencing hearing.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed. The case is remanded to the trial court for entry of the corrected judgment,

---

[5] The Defendant also uses the same "list of bulleted facts" approach in his Post-Hearing Memorandum In Support Of Motion For New Trial.

as provided in this opinion.

_____

D. KELLY THOMAS, JR., JUDGE